# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RICHARD MEYER, § | |
|         Plaintiff, § | |
| V. § | |
| § | 1:18-CV-0800-LY |
| MARK WAID, § | |
|         Defendant. § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #10) and related briefing.[1] After reviewing the pleadings, the supporting evidence attached to the pleadings, the relevant case law, and the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I.    BACKGROUND

Plaintiff Richard Meyer brings suit against Defendant Mark Waid for tortious interference with contract and defamation, seeking actual, special, and exemplary damages in excess of $75,000. Dkt. #1. Meyer is a citizen of Texas and Waid is a citizen of California, thus, this court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1132.

According to the Complaint, Meyer is a comic book enthusiast who created a YouTube channel to review comic books in April 2017. *Id.*, ¶ 8. The channel is called "Diversity & Comics," and its intention is to provide "comparisons of the superhero comics produced by

---

[1] The Motion to Dismiss was referred to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Marvel and DC Comics in the 1980's and 1990's to the comic books that were being produced today." *Id.*, ¶ 9. He describes newer comic books as "politicized" and observes that his "aggressive criticism" of newer comic books "was specific and often biting, sarcastic, and hyperbolic," noting that at times "his attempts at sardonic humor fell flat." *Id.*, ¶¶ 13; 10. His views "gathered a very vocal group of detractors, including Waid," who has his own substantial online following. *Id.*, ¶ 11. Meyer alleges that "Waid has described Meyer as a serial harasser of women and minorities, and claimed that [Meyer] promotes hate and intolerance." *Id.*, ¶ 13. He further alleges that "[t]hese statements were intended to discredit Meyer and detract from his vocal calls for fundamental change within the comic book industry." *Id.*

In April 2018, responding to criticisms that "he had only complaints about the emerging low quality product and had no solutions or appreciation for the difficulty of creating quality work," Meyer announced that he was publishing his own comic book, "JAWBREAKERS-Lost Souls." *Id.*, ¶¶ 14–15. Meyer began talks with a San Antonio-based publisher, Antarctic press, to publish and distribute the book. *Id.* By May 9, 2018, following a crowd-funding campaign to finance the book, Meyer alleges that he and Antarctic Press had agreed on the terms for publishing JAWBREAKERS and that Antarctic Press had "agreed conceptually to publish future comic books written by Meyer." *Id.*, ¶ 16. Meyer alleges that the very same day, "rumors and leak chat transcripts suggested that certain retailers aligned with Waid and his followers had agreed not to carry Meyer's book and to boycott Antarctic Press because of the misinformation being spread about Meyer and his views." *Id.*, ¶ 17. But according to Meyer, Antarctic Press was unfazed: later that evening, it announced the coming publication on its Twitter account.

Following this announcement, Meyer alleges that Waid tweeted about Antarctic Press's interest and called an owner of Antarctic Press. He alleges that Waid convinced the owner that

"Antarctic Press should repudiate its contract with Meyer." *Id.*, ¶ 19. Antarctic Press "caved to Waid's pressure" and issued a statement that it would not release JAWBREAKERS. *Id.* Then, "Waid deactivated all of his theretofore quite active social network accounts without explanation." Meyer alleges that he was "blackballed" by Waid and as a result, his "only option was to self-publish" at "significant expense" and with "significant delay." *Id.*, ¶ 20. The Complaint also alleges that "Waid has described the events of May 11 in interviews and on comic convention panels," suggesting that Meyer "was encouraging his followers to harass or threaten the comic book stores' employees." *Id.*, ¶ 22.

This Motion to Dismiss was filed on November 2, 2018. Following several extension requests, Meyer filed an Unopposed Motion to Conduct Jurisdictional Discovery. That relief was granted on November 29, 2018. Following that jurisdictional discovery, briefing on this issue continued, with Meyer's Response filed on April 12, 2019 and Waid's Reply filed on April 22, 2019. The briefing by both sides contains significant argument as to the merits of Plaintiff's claims, however, the undersigned's analysis focuses on the jurisdictional allegations and evidence in considering the Motion to Dismiss for Lack of Personal Jurisdiction.

## II. PERSONAL JURISDICTION

### A. Applicable Law

When the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018); *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for

jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Sangha*, 882 F.3d at 101. The court shall accept as true the non-conclusory uncontroverted allegations of the party seeking to assert jurisdiction and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *Cent. Freight Lines Inc.*, 322 F.3d at 380. "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101

Specific jurisdiction is a claim-specific inquiry. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). It focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Texas's long-arm statute extends to the limits of federal due process, which permits the exercise of personal jurisdiction over a non-resident defendant where (1) the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)(citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The touchstone of the court's inquiry is "whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Trois*, 882 F.3d at 490 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)).

A defendant bears the burden to show that exercise of specific jurisdiction would *not* be fair and reasonable once minimum contacts have been shown by the plaintiff, and such a finding is rare. *McFadin*, 587 F.3d at 759–60. The court examines five factors in this inquiry: (1) the burden on the non-resident defendant, (2) the forum state's interests, (3) the plaintiffs' interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

**B.   Analysis**

With the benefit of jurisdictional discovery, Meyer alleges and provides evidence of two straightforward contacts by Waid with Texas: Waid "initiating a phone call to San Antonio to one of the parties to the contract, soliciting a return phone call, and then encouraging that party to breach the contract" and "[t]wo weeks later, Waid traveled to Texas and publicly defamed Meyer (a Texas resident) at a Houston comic book convention." Dkt. #23 at 1.

*1. Tortious Interference*

A tortious interference with an existing contract claim exists when a defendant causes a third party to breach their contract with the plaintiff. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017). Here, Meyer alleges that Waid tortiously caused a Texas company to breach its contract with a Texan. To support this theory, he alleges (and the parties appear to agree) that Waid called a Texas company on a San Antonio landline and spoke with an office manager for the company. When the owner returned his phone call later that afternoon, they spoke at length, discussing Meyer's book for twenty-seven minutes. Waid responds that he was previously unaware that Meyer was a resident of Texas, did not know at the time he made

the phone call that Antarctic Press was a Texas company,[2] and did not know that the landline number he called was a San Antonio, Texas number. He argues that his "ignorance that plaintiff was in Texas . . . defeats any finding of jurisdiction as a matter of law." Dkt. #24 at 2.

None of the cases cited by Waid for that proposition is completely analogous to these facts. Two of the cases, *Revell* and *Fielding*, focus on defamation claims rather than tortious interference claims. *See Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)(finding no personal jurisdiction over defamatory statements concerning Texas resident posted on the internet where the article did not mention Texas and was not specifically directed to Texas readers); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005)(finding no personal jurisdiction over defamatory statements published by German news magazine with very limited Texas circulation when plaintiff did not demonstrate a Texas residence during any relevant time period or any "more direct aim" of the harm toward Texas).[3]

The remaining case Waid highlights, *Festor*, is closer to the facts at hand but also distinguishable. *Festor v. Wolf*, Civil No. SA – 09 –CA –0054–XR, 2009 WL 10669519, at *6 (W.D. Tex. Aug. 24, 2009). In *Festor*, the jurisdictional dispute was as follows: "Defendant argues that she lacks minimum contacts because she did not solicit the buyers in Texas, communicated directly with the representatives of Mision La Serena in Mexico in connection with the sale, had no direct communication with the Plaintiffs, and did not know Plaintiffs were Texas residents when signing the Interim Agreement or the Letter of Intent. Plaintiffs argue that Wolf made misrepresentations in phone calls with Texas residents, made misrepresentations in a contract she sent to Texas residents, Plaintiffs' claims arise out of these contacts with Texas,

---

[2] This fact is disputed and at this stage the court must resolve factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *See Cent. Freight Lines Inc.*, 322 F.3d at 380.
[3] *Fielding* also included a claim of tortious interference with prospective business relations, but it was not individually addressed by the Fifth Circuit.

Plaintiffs lost nearly three quarters of a million dollars in Texas, and Wolf made no effort to guard against suit in Texas." *Id.* at *4.

The *Festor* court, concluded that "though the allegedly tortious statements contained in the [relevant contractual documents] eventually made their way to Plaintiffs in Texas, it cannot be said that [Defendant] purposefully directed the tortious statements to Texas." *Id.*at *6. It focused on the facts that the dispute surrounded a property in Mexico, the communications that gave rise to the claims most directly were sent directly to Mexico, not to Texas, and the fact that there was a dispute as to whether the defendant knew the plaintiffs were in Texas at the time of the fraud. Here, although defendant also disputes knowing plaintiff was in Texas at the time of the allegedly tortious conduct, the facts are otherwise different: Waid's phone call underlying the tortious interference claim was made to a Texas company at a Texas landline phone number about a Texan.

Waid's best cases, distinguished above, all precede the Fifth Circuit's recent guidance in *Trois v. Apple Tree Auction Ctr.* on precisely this point, which reiterated that that a single communication may be enough to establish personal jurisdiction in an intentional-tort claim when a non-resident defendant places a phone call to the forum state and makes false statements over the phone to a forum resident. *Trois v. Apple Tree Auction Ctr.*, 882 F.3d 485, 491 (5th Cir. 2018)(collecting cases). Waid has not adequately articulated why this case falls outside the direction of *Trois*. *See also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment . . . It is of no use to say that the plaintiff "fortuitously resided in Texas.") Accordingly, the undersigned finds that Meyer has established a prima facie case of minimum contacts over Waid with respect this claim.

Further, Waid has not shown that the assertion of jurisdiction over him would be unfair. A defendant bears the burden to show that exercise of specific jurisdiction would *not* be fair and reasonable once minimum contacts have been shown, and such a finding is rare. *McFadin*, 587 F.3d at 759–60. Again, the court examines five factors in this inquiry: (1) the burden on the non-resident defendant, (2) the forum state's interests, (3) the plaintiffs' interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* While it would burden Waid, a California resident, to litigate this matter in Texas, this factor cannot be dispositive. Here, Meyer alleges that Waid tortuously interfered in a contract between a Texas resident and a Texas company. Because of that, Texas has a great interest in this case. Waid has pointed to no other considerations that render personal jurisdiction unfair or unreasonable.

For the foregoing reasons, the Motion should be denied as to Meyer's intentional interference claim.

*2. Defamation*

There are discrepancies in Meyer's characterization of his defamation claim against Waid but the Response does not include a request to amend the Complaint. In the Complaint, the allegations are as follows:

> Through his various social media accounts, Waid intentionally published statements of fact to his followers and the general public regarding Meyer, including falsely stating that Meyer published the first and last names of comic book store employees to encourage his followers to harass and threaten them, as well as characterizing Meyer as a racist, serial harasser of minorities, and as affiliated with white supremacists.

Dkt. #1, ¶ 24. In his Response to the Motion, Meyer states the claim differently:

> Waid traveled to Texas and publicly defamed Meyer (a Texas resident) at a Houston comic book convention.

Dkt. #23 at 1. Meyer goes on to argue that "Waid repeated the defamatory statement to a Texas audience in Houston. Waid should have every expectation of being haled into a Texas court as a result." *Id.* at 14. But as alleged in the Complaint, Waid's Houston statements are *not* the basis of Meyer's alleged defamation claim.  Meyer has not cited any authority that supports his argument that a defendant's later repetition of a defamatory statement to an in-person, forum state audience gives rise to personal jurisdiction when the underlying claim *only* alleges earlier defamatory social media statements. Meyer seems to agree with Waid that "personal jurisdiction cannot be based solely on statements being accessible on social media or the internet in the forum state." *Id.* For these reasons, Meyer has not met his burden of establishing personal jurisdiction over Waid on his defamation claim as it is currently alleged, because he has not shown that his defamation claim arises out of or results from this contact. *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010)(citing *Calder v. Jones*, 465 U.S. 783 (1984)(finding the district court did not err in dismissing for lack of personal jurisdiction where the allegedly defamatory statements were not made in Texas or directed to residents of Texas).

### III.  RECOMMENDATION

For the reasons given above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. #10) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion should be granted as to Plaintiff's Defamation claim and denied as to Plaintiff's Tortious Interference claim.

The referral of this matter to the Magistrate Judge should now be canceled.

### IV.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED June 10, 2019

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE