IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD MEYER, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 1:18-cv-00800-LY |
| | § | |
| MARK WAID, | § | |
| Defendant | § | |

---

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT
## FOR LACK OF PERSONAL JURISDICTION

---

Defendant Mark Waid ("Waid") files this Reply in support of his Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (Dkt. #43). This round of briefing has only further highlighted two fundamental problems with this lawsuit: (a) the Court lacks jurisdiction over Waid, and (b) Plaintiff's claims are completely meritless.  But it is point (a) that requires dismissal at this juncture.  Among other things, Plaintiff, who publicly advertised he was in New York during the relevant time period, neither shows nor even pleads Waid knew that Plaintiff resided in Texas or that he would suffer the brunt of any harm there, thus conclusively defeating jurisdiction as to each of his claims.  Waid respectfully submits that the jurisdiction issue must be correctly decided at this stage; otherwise, the parties will engage in time-consuming litigation only to have the Fifth Circuit find the case could not be litigated in Texas at all.

## I.     The Court Lacks Personal Jurisdiction Over Waid.

Fifth Circuit precedent is clear that each claim must be separately analyzed for jurisdiction. *See Trois v. Apple Tree Auction Ctr*, 882 F.3d 485, 489 (5th Cir. 2018) ("specific personal jurisdiction is a claim-specific inquiry" (citation omitted)).

### A.   Plaintiff Failed To Establish Jurisdiction As To the Tortious-Interference Claim.

Plaintiff does not dispute that Waid had no knowledge that Plaintiff resided in Texas, or that he would suffer the brunt of any harm there.  *See* Ex. A, Waid Decl. ¶ 9.[1]  In fact, Plaintiff does not dispute that Plaintiff himself publicly identified his location as New York.  *Id.* ¶ 8.  For obvious reasons, Plaintiff deliberately ignores this issue.  He does not even attempt to establish that he lived in Texas during the relevant time; for all anyone knows, he only moved to Texas right before he filed this lawsuit.  In any case, under Fifth Circuit precedent, Waid's lack of knowledge in this regard conclusively requires dismissal of this lawsuit.

---

[1] References to the exhibits herein are to attachments to Defendant's Motion to Dismiss (Dkt. #43).

As the Fifth Circuit has held, "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* [specific-jurisdiction] test." *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002); *see also Revell*, 317 F.3d at 475 & n.63 (observing plaintiff must show "'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant *knows to be a resident of the forum state*'" (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis in original)); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5ᵗʰ Cir. 1988) (explaining specific-jurisdiction test regarding intentional torts involves showing that "the tort-feasor knows that the brunt of the injury will be felt by a *particular resident in the forum*" (emphasis added)). The Western District of Texas has likewise recognized and applied this basic principle. *See, e.g.*, *Rad v. Bragg*, No. 14-1074, 2015 WL 12748177, at *3 (W.D. Tex. May 8, 2015) ("Because [defendant] did not know where [plaintiff] was located during their communications, [defendant's] conduct was necessarily not purposefully directed at Texas…."); *Festor v. Wolf*, No. 09-0054, 2009 WL 10669519, at *5 (W.D. Tex. Aug. 24, 2009) (finding no jurisdiction where "Plaintiffs failed to establish a prima facie case that [defendant] knew that Plaintiffs resided in Texas" at time of defendant's allegedly tortious conduct).

Revealingly, Plaintiff does not even address the Fifth Circuit precedent, or the principle, requiring that he show that Waid knew he was in Texas and would suffer the brunt of harm there. Plaintiff cannot get around this fundamental defect; ignoring it does not make it go away.

Repeatedly, Plaintiff cites to case law that involves defendants who knew the plaintiffs resided in the forum state—and most of that case law also involved allegedly tortious communications with the plaintiffs themselves. As pointed out in Waid's Motion to Dismiss (Dkt. #43 at 12), in *Trois v. Apple Tree*, 882 F.3d at 488, the plaintiff expressly claimed the defendant

"knew [the plaintiff] lived in Texas" during allegedly tortious phone calls with the plaintiff.[2]  Here, Waid undisputedly lacked knowledge that the Plaintiff was in Texas (even assuming he actually resided in Texas during the relevant time—which itself is unclear).  *See, e.g.*, *Festor*, 2009 WL 10669519, at *5 (distinguishing Fifth Circuit case law involving phone calls in which "there was no dispute regarding whether the defendants knew that the plaintiffs were in Texas").

Plaintiff does not (and cannot) show that Waid knew, or even suspected, *the Plaintiff* resided in the forum; so he tries a sleight of hand.  He relies entirely on the phone communications between Waid and Antarctic Press ("AP") to suggest that Waid knew AP—a non-party to this litigation— was in Texas at that time.  But AP's location is immaterial given Waid's lack of knowledge regarding *Plaintiff's* location.  Even putting that aside, there is no evidence Waid knew AP was in Texas at the time of the phone calls.  In fact, the evidence shows the opposite. *See* Ex. A, Waid Decl. ¶¶ 14, 21.  Other discovery on this point also undercuts Plaintiff's assertions.  Plaintiff relies on Waid's recollection he met Ben or Joe Dunn previously; but there is no evidence any such meeting revealed AP to reside in Texas—as Waid indicated, any interactions were at industry

---

[2] None of Plaintiff's other case law supports jurisdiction either.  *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (involving defendant who addressed fraudulent documents to plaintiff in Texas); *SGS-Thomson Micro-Elecs. v. Ferris*, 55 F.3d 632 n.3 (5th Cir. 1995) (*unpublished*) (involving defendant who sent letter to plaintiff in Texas and citing case law where defendant "direct[ed] actions toward the forum state with knowledge that brunt of injury would occur to Plaintiff in forum"); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent*, 754 F.2d 542, 544-47 (5th Cir. 1985) (involving defendant who knew plaintiff was in Texas and even had visited in person with plaintiff in Texas prior to phone calls); *Tyson v. Austin Eating Disorders Partners*, No. 13-180, 2013 WL 3197641, at **2-4 (W.D. Tex. June 21, 2013) (involving defendant who knew plaintiff was in Texas because plaintiff was officer in Texas company in which defendant was also an officer); *Office VP LLC v. Ideal Health Inc.*, No. 11-741, 2012 WL 787041, at **4-5 (W.D. Tex. March 6, 2012) (involving contracts with venue clauses expressly requiring litigation in Texas). *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 330-31 (5th Cir. 1982), may not have involved communications directly with the plaintiff, but the case involved an intentional phone call to the U.S. Attorney for Mississippi (the forum) that prevented Mississippi plaintiffs from obtaining a loan—making clear the defendant knew the plaintiffs resided there.

functions and "limited." Ex. A, ¶ 15 ("None of those limited interactions involved any statement

or indication that caused me to think or realize that [AP] was in Texas.").  Neither of the AP

principals even recalls meeting Waid. *See* Ex B., Ex. 1, Joe Dunn Depo. at 12:12-17; Ex. 10, Ben

Dunn Depo. at 12:8-12.  Joe Dunn additionally testified that AP is not known as a Texas publisher:

> Q:  Do you convey that you're … a Texas-based publisher in the course of [AP's]
> promotions?
> A:  Typically not.
> Q:  . . . Do you—do you have a sign up [at conventions] that identifies you as based in
> San Antonio?
> A:  No.
> Q:  Do you believe that folks know where you're – where you're based . . . based on
> what—what you see happen at these conventions and what you know about your
> reputation?
> . . . .
> A:  I believe no.

Ex. 1 at 32:17-33:7. Plaintiff also points to AP's "210" area code; but there is no evidence this area

code is so well known outside of Texas that it would typically be recognized as associated with

Texas—much less that Waid himself so identified it.[3]   Left with no evidence, Plaintiff resorts to

---

[3] Even if one were to simply assume that someone in California should know the "210" area code
is associated with Texas—an assumption without any basis—that would not change the fact that
Waid himself did not know this.  Moreover, while the Texas Supreme Court's decision in *Michiana
Easy Livin'* may not be binding, the Court's reasoning is directly relevant here in emphasizing that
a call to or from any particular area code is no reliable indicator of any purposeful availment, even
if the defendant knew the area code was associated with a particular state, in light of "changes in
technology," such as the fact numbers today are often associated with *mobile* phones. *See
Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005). *Michiana* should
be held to be more persuasive than the out-of-state decisions that Plaintiff cites. *See also Tornado
Bus. Co. v. Bus. & Coach Am. Corp.*, No. 14-3231, 2014 WL 7333873, at *3 (N.D. Tex. Dec. 23,
2014) ("courts are reluctant to find jurisdiction based only on emails and phone calls" (citing
*Michiana*)).

    Plaintiff also *falsely* claims Waid stated he "did not know where AP was located until this
suit was filed" (Dkt. #44 at p.10); Waid had simply explained he did not know AP's location at
the time of the calls with AP. Dkt. #10-1, ¶ 14.  That remains true and unrebutted. Waid learned
AP was in Texas after the brouhaha that erupted after AP's independent decision not to publish
JAWBREAKERS (*see* Ex. A, ¶ 21), but that is immaterial to Waid's knowledge at the time of the
calls.  *See, e.g.*, *Festor*, 2009 WL 10669519, at *5 (no jurisdiction, though defendant later learned
plaintiff was in Texas, because no evidence plaintiff knew that at time of alleged fraud).

conclusory assertions.  Dkt. #44 at p.11 (asserting Waid is "simply not credible").  Plaintiff's bald invective, however, is not evidence.

In sum, Plaintiff's inability to show Waid knew Plaintiff resided in Texas by itself requires dismissal of his tortious-interference claim, whether or not Waid knew about AP's location.  Beyond that, however, Plaintiff has no evidence Waid knew AP's location at the time of the calls.

**B.  <u>Plaintiff Cannot Establish Personal Jurisdiction As To His Defamation Claims.</u>**

Plaintiff does not dispute the fact that allegedly defamatory "statements [made] at different times and for different audiences . . . represent completely different torts because they are different publications."  *Deaver v. Desai*, 483 S.W.3d 668, 676 (Tex. App.—Houston [14th. Dist.] 2015, no pet.).  Plaintiff likewise admits that his defamation claims based on Waid's social-media or non-Texas statements do not support personal jurisdiction.  *See* Dkt. #44 at p.15.  Plaintiff therefore entirely hangs his case for jurisdiction over the defamation count on Waid's statements at a convention in Houston occurring after AP's decision to not publish JAWBREAKERS. *See id.*

1.  <u>Plaintiff still does not establish jurisdiction as to the "Houston" claim.</u>

Plaintiff baldly asserts, "knowledge of [his] Texas citizenship is not required for this Court to assert jurisdiction over Waid's defamatory statements made in Texas."  Dkt. #44 at p.13. Waid acknowledges that his presence in Houston makes the case for jurisdiction for this particular defamation claim closer than Plaintiff's other claims (which plainly do not support jurisdiction). Ultimately, however, no exception exists to the threshold requirement that, in the intentional tort context, the defendant must have known *the plaintiff* was in the forum.  *See Revell*, 317 F.3d at 475 ("Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm *forms an essential part of the <u>Calder</u> test*." (emphasis added)).  The test for jurisdiction is based in the Due Process Clause and federal courts, including the Fifth Circuit, have deliberately

created strict contours for when jurisdiction exists.  In the case of intentional torts, the plaintiff must establish that "the tort-feasor [knew] that the brunt of the injury [would] be felt by a *particular **resident** in the forum*."  *Southmark*, 851 F.2d at 772 (emphasis added).  In *Calder*, the defamatory statements were widely published in the forum, but that was not the end of the inquiry—the Court found jurisdiction where the defendants also knew the plaintiff resided in the forum.  *See id.*; *see also Calder*, 465 U.S. at 785 ("About 600,000 of those [National Enquirer] copies, almost twice the level of the next highest state, are sold in [the forum state].").

In *Carmona v. Leo Ship Mgt.*, 924 F.3d 190 (5th Cir. 2019), the Fifth Circuit made clear that the mere fact that a defendant committed a tort in the forum state *does not* inherently support jurisdiction and instead the totality of facts must be considered.  *See id.* at 194-195 ("[A] nonresident defendant's activities, *whether direct acts in the forum* or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there." (emphasis added)).  In *Carmona*, the defendant committed negligence in the forum that caused pipes to fall and physically injure the plaintiff in the forum.  *Id.*  In contrast, Plaintiff alleges the intentional tort of defamation, and crucially Waid did not know where Plaintiff was located and therefore did not know where he would allegedly suffer the brunt of the alleged injury to his reputation.[4]  The entire defamation count should be dismissed.

2.  Alternatively, the Court should exercise its discretion and decline to keep only the "Houston" defamation claim.

Even if the Court were inclined to find jurisdiction as to the defamation claim based on the Houston statements, the Court need not ultimately decide that issue.  Rather, the Court can (and

---

[4] Again, it is not even clear whether Plaintiff even resided in Texas during this timeframe.  In addition, Waid also notes that the Houston statements occurred at an internationally marketed convention, such that "the attendees c[a]me from all over the world" and the "audience to which [he] spoke would have included very many attendees from outside Texas." Ex. A, ¶ 21.

should) still find that the situation would not justify the exercise of jurisdiction.  First, the "fair and reasonable" factors do not support jurisdiction over such a narrow slice of Plaintiff's claims—particularly since the Houston-related defamation claim is based on events occurring after AP decided not to publish Plaintiff's book (which is the actual gist of this dispute).  *See* Dkt. #43 at 18-19.  In the alternative, the Court respectfully should transfer any remaining Houston-related claim to the Central District of California, pursuant to 28 U.S.C. § 1404(a).  *Id.* at 20 & n.8.

Plaintiff does not dispute the nonsensical nature of this Court keeping only his defamation claim based on the Houston statements.  But he tries to sidestep this by suggesting that the Court, upon finding jurisdiction as to the Houston claim, can then exercise "pendent" or "supplemental" personal jurisdiction over the other defamation claims.  Dkt. #at 44, p.14-15.  Plaintiff's arguments on this point are directly contradicted by governing precedent.

The Fifth Circuit has clearly rejected the concept of "pendent" or "supplemental" personal jurisdiction: "There is no such thing as supplemental specific personal jurisdiction."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (citation omitted).  Instead, "specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."  *Id.* (citation omitted).  Thus, while some district courts have applied "pendent" personal jurisdiction, it is not a valid concept under binding Fifth Circuit precedent.  Indeed, in *Carmona*, the Fifth Circuit very recently reiterated the fact that each claim *must* independently and separately support personal jurisdiction.  That case involved multiple allegations of negligence, all of which were tied to the same incident and the same personal injury.  *See Carmona*, 924 F.3d at 197.  Nevertheless, the Fifth Circuit held that the plaintiff was required to "establish specific jurisdiction for each claim."  *Id.*  The *Carmona* Court further explained that even when the plaintiff "has raised only one *type* of claim" (there,

"negligence"), "the court must separately consider specific jurisdiction for each claim." *Id.* at 197-198 & n.16 (finding jurisdiction over some negligence claims but not others). Therefore, the Fifth Circuit has shut and deadlocked the door on "pendent" or "supplemental" personal jurisdiction, such that there can be no lingering doubt about whether the concept is valid in the Fifth Circuit—it is not. *See also Trois*, 882 F.3d at 490 (applying claim-by-claim analysis and finding jurisdiction over only part of claims even though all claims were tied to same calls). It is telling that Plaintiff ignores this precedent.[5]

In sum, the Court respectfully should find jurisdiction lacking as to each of Plaintiff's defamation claims. Waid acknowledges that the "Houston" defamation claim presents a closer call, but jurisdiction still fails as to that claim—or, alternatively, the Court should decline to exercise jurisdiction over that claim, as Plaintiff's remaining claims cannot be decided in Texas.

## II.   Discovery Also Established That Plaintiff's Lawsuit Is Substantively Meritless.

Because Plaintiff's jurisdictional arguments are intertwined with his various assertions about the merits, Waid feels compelled to briefly correct the misleading picture Plaintiff tries to paint. Plaintiff repeatedly suggests that Waid caused AP to not publish Plaintiff's book. Dkt. #44 at 1, 12-13. As discussed above, even accepting Plaintiff's allegations as true, Plaintiff falls far

---

[5] Even if pendent jurisdiction were a valid concept (which it is not), it would not apply. Here, the alleged forum contacts underlying the separate defamation claims are different. *See Seifarth*, 472 F.3d at 274. Moreover, the concept could only apply if the claims arise out of the same common nucleus of operative fact. Plaintiff does not explain how this standard could apply here—given the Houston statements occurred *after* AP decided not to publish Plaintiff's book and before a live audience as opposed to through social media. *Cf. Schirle v. Sokudo USA, LLC*, 484 Fed. Appx. 893, 901 (5th Cir. 2012) (refusing to allow new defamation claim to relate back to original complaint, even though all statements related to same subject matter, because "each alleged defamatory publication [is] a single transaction with an independent injury"). Finally, even if the concept of pendent jurisdiction were valid, it would be discretionary, and exercising discretion against application of pendent jurisdiction would be the correct decision—especially since Waid did not even know Plaintiff resided in Texas.

short of establishing personal jurisdiction.  But, here, actual evidence also reveals that Plaintiff's allegations are demonstrably false—and reveals this lawsuit to be nothing more than a publicity stunt.

In making his bald assertions, Plaintiff intentionally ignores explicit testimony that AP decided against publishing Plaintiff's book because of Plaintiff's own conduct—not anything to do with Waid.  Waid's Motion to Dismiss discussed some of the detail establishing the baseless nature of Plaintiff's claims.  *See* Dkt. #43 at 4-7; 15 n.3.  But, given Plaintiff's persistence in nevertheless repeating his baseless allegations, Waid is compelled to reiterate some of the key points showing that nothing Waid did—and certainly nothing in the way of any connection between Waid and Texas—supports this lawsuit. For example, AP's owner Mr. Dunn testified:

> Q:    *And so, again, there were factors that led to Antarctic Press's decision that had no relationship to Mark Waid; correct?*
> A:    *Yes.*
> Q:    And those factors were concern that your staff and freelancers had expressed; correct?
> A:    Correct.
> Q:    And including Mr. Meyer's own conduct; correct?
> A:    Correct.
> Q:    *And those factors that led to AP's decision are factors unrelated to Mark Waid; correct?*
> A:    *Correct.*
> . . . .
> Q:    Did – you made the decision for Antarctic Press; correct?
> A:    Correct.
> Q:    And that was your decision; correct?
> A:    100 percent.
> Q:    And you made that decision voluntarily?
> A:    Correct.
> Q:    *And Mark Waid, did he do anything to prevent AP from publishing Mr. Meyer's book*?
> A:    *No.*

Ex. B, Ex.1, at 107:20-108:19; 111:7-111:16 (emphasis added).

AP's editor in chief (or "EIC") found Plaintiff's conduct so repulsive that he had been unable to "sleep or work" in the face of AP's possibly associating with Plaintiff.  *Id.* Ex. 6. (emphasis added); Ex. 1 at 96:24-99:24; 101:16-23.  AP's EIC wanted his name removed from *all books published by AP if it were to publish Plaintiff's book*.  *Id.* at 99:8-16. Mr. Dunn testified that "everybody" at AP had concerns about publishing Plaintiff's book after his conduct had come to light, with one creator pulling his project from AP and others expressing concern about even standing with Meyer at comic conventions.  *See* Ex. 1, at 92:6-15; 93:13-25; Ex. 7; Ex. 1 at 108:20-109:6; *see also id.* 109:24-110:11 & Ex. 9.[6]  In light of all this, Mr. Meyer's own conduct led to AP's decision against publishing Plaintiff's book, not anything Waid did or said.  *See also id.* at 43:14-44:4 (confirming that before he spoke with Waid, Mr. Dunn "felt like [he] didn't want to continue down that pathway [of publishing Plaintiff's book]").[7]  There is no legal or factual basis for Plaintiff's claims—and certainly no basis for tying his claims to Waid's contacts with Texas.

## CONCLUSION AND PRAYER

Defendant Waid prays that the Court dismiss Plaintiff's lawsuit pursuant to Rule 12(b)(2). Defendant further prays for such other and further relief to which he may be justly entitled, at law or in equity.

---

[6] Plaintiff also baldly asserts that Waid was an "active participant advocating against publication," Dkt. #44 at p.11.  This is also false.  Waid did not "advocate" against publication; in fact, he "did not tell or even ask [AP] to not publish JAWBREAKERS." Ex. A, ¶ 17.

[7] Plaintiff puts weight on the fact that Mr. Dunn texted Waid soon after AP made the decision to not publish the book.  But Mr. Dunn even poured cold water on Plaintiff's suggestions around this; Mr. Dunn explained he did not realize he was even texting with Waid but was confused and thought he was texting with someone else because he had been communicating with many people in this timeframe.  Ex. B, Ex. 1, 50:13-25; 52:3-20; 55:17-57:4. Plaintiff also relies on testimony from Ben Dunn (the owner's brother), but Ben testified his brother Joe never shared with him information about the call with Waid and, therefore, his observations related to the call are purely "speculation." Ex. 10, 33:13-34:7.

Respectfully submitted,

REEVES & BRIGHTWELL LLP


*/s/ Ryan Pierce*
Beverly Reeves, Esq.
State Bar No. 16716500
breeves@reevesbrightwell.com
Ryan Pierce, Esq.
State Bar No. 24035413
rpierce@reevesbrightwell.com
221 W. 6th Street, Suite 1000
Austin, TX  78701
(512) 334-4500
(512) 334-4492 (facsimile)

Mark S. Zaid, Esq.
D.C. Bar #440532 (admitted *Pro Hac Vice*)
Mark@MarkZaid.com
Mark S. Zaid, P.C.
1250 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax

**ATTORNEYS FOR DEFENDANT**

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 28th day of August, 2019, the above and foregoing document was served using the Court's ECF system on the following counsel of record:

> Daniel H. Byrne
> Dale L. Roberts
> Fritz, Byrne, Head & Gilstrap, PLLC
> 221 W. 6th St., Suite 960
> Austin, TX 78701
> dbyrne@fbhg.law
> droberts@fbhg.law

*/s/ Ryan Pierce*
Ryan Pierce