**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| RICHARD MEYER, | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | No. 1:18-CV-0800-LY |
| MARK WAID, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #43) and related briefing.[1] After reviewing the pleadings, relevant case law, and the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I.   BACKGROUND**

The dispute before the court mirrors the dispute in Defendant's previous Motion to Dismiss. Dkt. #10. On June 10, 2019, the undersigned filed a Report and Recommendation on Defendant's first Motion to Dismiss for Lack of Personal Jurisdiction. *Id.* Subsequently, the District Court granted Plaintiff leave to file his First Amended Complaint, Dkt. #28, mooting the undersigned's Report and Recommendation. Plaintiff filed his First Amended Complaint largely seeking to remedy the pleading deficiencies identified by the undersigned, but added only limited additional allegations to his Original Complaint. *Compare* Dkt. # 1, *with* Dkt. #40. Defendant subsequently filed his second Motion to Dismiss for Lack of Personal Jurisdiction, which is now

---

[1] The Motion to Dismiss was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

before the court. *See* Dkt. #43. Given the arguments are largely the same, the undersigned repeats part of its analysis from its previous Report and Recommendation.

Plaintiff Richard Meyer brings suit against Defendant Mark Waid for tortious interference with contract and defamation, seeking actual, special, and exemplary damages in excess of $75,000. Dkt. #40. Meyer is a citizen of Texas, and Waid is a citizen of California; thus, this court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

According to the First Amended Complaint, Meyer is a comic book enthusiast who created a YouTube channel to review comic books in April 2017. *Id.* at ¶¶ 8-9. The channel is called "Diversity & Comics," and its intention is to provide "comparisons of the superhero comics produced by Marvel and DC Comics in the 1980's and 1990's to the comic books that were being produced today." *Id.* at ¶ 9. Meyer describes newer comic books as "politicized" and observes that his "aggressive criticism" of newer comic books "was specific and often biting, sarcastic, and hyperbolic," noting that at times "his attempts at sardonic humor fell flat." *Id.* at ¶¶ 13, 10. His views "gathered a very vocal group of detractors, including Waid," who has his own substantial online following. *Id.* at ¶ 11. Meyer alleges that "Waid has described Meyer as a serial harasser of women and minorities, and claimed that [Meyer] promotes hate and intolerance." *Id.* at ¶ 13. He further alleges that "[t]hese statements were intended to discredit Meyer and detract from his vocal calls for fundamental change within the comic book industry." *Id.*

In April 2018, responding to criticisms that "he had only complaints about the emerging low quality product and had no solutions or appreciation for the difficulty of creating quality work," Meyer announced that he was publishing his own comic book, "JAWBREAKERS-Lost Souls." *Id.* at ¶¶ 14–15. Meyer began talks with a San Antonio-based publisher, Antarctic Press, to publish and distribute the book. *Id.* By May 9, 2018, following a crowd-funding campaign to

finance the book, Meyer alleges that he and Antarctic Press had agreed on the terms for publishing JAWBREAKERS and that Antarctic Press had "agreed conceptually to publish future comic books written by Meyer." *Id.* at ¶ 16. Meyer alleges that the very same day, "rumors and leak chat transcripts suggested that certain retailers aligned with Waid and his followers had agreed not to carry Meyer's book and to boycott Antarctic Press because of the misinformation being spread about Meyer and his views." *Id.* at ¶ 17. But according to Meyer, Antarctic Press was unfazed and later than evening announced on Twitter: "[i]t's official! We're publishing JAWBREAKERS in September." *Id.*

Following this announcement, Meyer alleges that Waid tweeted about Antarctic Press's interest and called an owner of Antarctic Press. *Id.* at 18-19. He alleges that Waid convinced the owner that "Antarctic Press should repudiate its contract with Meyer." *Id.* at ¶ 19. Meyer alleges Antarctic Press "caved to Waid's pressure" and issued a statement that it would not release JAWBREAKERS. *Id.* Then, "Waid deactivated all of his theretofore quite active social network accounts without explanation." Meyer alleges that he was "blackballed" by Waid and as a result, his "only option was to self-publish" at "significant expense" and with "significant delay." *Id.* at ¶ 20. The First Amended Complaint also alleges that "Waid has described the events of May 11 in interviews and on comic convention panels," suggesting that Meyer was "directing his followers to harass or threaten the stores and their employees." *Id.* at ¶ 22, ¶ 22 n.1.

In light of the above allegations, Meyer brings tortious interference with a contract and defamation claims against Waid. *Id.* at ¶¶ 23-26. Specifically, Meyer argues that Waid tortiously interfered with the contract that Meyer had with Antarctic Press for the publication of JAWBREAKERS and other comic books. *Id.* at ¶ 23. Furthermore, Meyer contends Waid defamed him by intentionally publishing false statements of fact about him to "his followers and the general

3

public," including "falsely stating that Meyer published the first and last names of comic book store employees to encourage his followers to harass and threaten them, as well as characterizing Meyer as a racist, serial harasser of minorities, and as affiliated with white supremacists." *Id.* at ¶ 24.

This Motion to Dismiss for Lack of Personal Jurisdiction was filed on August 7, 2019, following jurisdictional discovery, previous briefing, and a previous report and recommendation written on the same dispute. Meyer's Response was filed on August 21, 2019, and Waid's Reply on August 28, 2019. The briefing by both sides contains significant argument as to the merits of Meyer's claims; however, the undersigned's analysis focuses on the relevant jurisdictional allegations and evidence.

## II.   PERSONAL JURISDICTION

### A.   Applicable Law

When the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018); *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Sangha*, 882 F.3d at 101. The court shall accept as true the non-conclusory uncontroverted allegations of the party seeking to assert jurisdiction "and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Cent. Freight Lines Inc.*, 322 F.3d at 380. "Although jurisdictional allegations must be accepted as true, such acceptance

does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101

Specific jurisdiction is a claim-specific inquiry. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). It focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Trois*, 882 F.3d at 492 (noting the correct relationship to focus on is between "the defendant[] and the forum"). Texas's long-arm statute extends to the limits of federal due process, which permits the exercise of personal jurisdiction over a non-resident defendant where (1) the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The touchstone of the court's inquiry is "whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Trois*, 882 F.3d at 490 (quoting *Walden v. Fiore*, 571 U.S. at 284).

A defendant bears the burden to show that exercise of specific jurisdiction would *not* be fair and reasonable once minimum contacts have been shown by the plaintiff, and such a finding is rare. *McFadin*, 587 F.3d at 759–60. The court examines five factors in this inquiry: (1) the burden on the non-resident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of

justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

### B. Analysis

With the benefit of jurisdictional discovery, Meyer alleges and provides evidence of two straightforward contacts by Waid with Texas: (1) Waid initiated a phone call to Texas business Antarctic Press in San Antonio via a Texas landline, solicited a return phone call, and then encouraged Antarctic Press to breach the contract, Dkt. #44 at ¶¶ 1, 15-17; and (2) Waid traveled to Texas and publicly defamed Meyer (a Texas resident) at a Houston comic book convention, *id.* at ¶ 1, 11.

#### 1. Tortious Interference with a Contract

A tortious interference with an existing contract claim exists when a defendant causes a third party to breach their contract with the plaintiff. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017). Here, Meyer – a Texas resident – alleges that Waid tortiously caused Antarctic Press – a Texas company – to breach its contract with him. To support this theory, Meyer alleges (and the parties appear to agree) that Waid called Antarctic Press's office in San Antonio and spoke with an office manager for the company. *Compare* Dkt. #44 at ¶ 5, *with* Dkt. #43 at 13-14. When the owner returned his phone call later that afternoon, they spoke at length, discussing Meyer's book for twenty-seven minutes. Dkt. #23-1 at 10. Waid responds that he was previously unaware that Meyer was a resident of Texas, did not know at the time he made the phone call that Antarctic Press was a Texas company,[2] and did not know that the landline number he called was a San Antonio, Texas number. He argues that Meyer "neither shows nor

---

[2] This fact is disputed and at this stage the court must resolve factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *See Cent. Freight Lines Inc.*, 322 F.3d at 380.

even pleads Waid knew that Plaintiff resided in Texas or that he would suffer the brunt of any harm there, thus conclusively defeating jurisdiction as to each of his claims." Dkt. #46.

This court has specific personal jurisdiction over Meyer's tortious interference claim. "When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within the state . . . to exercise personal adjudicative jurisdiction." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (quoting *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999)). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this *alone* constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (emphasis added) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989)).

Providing additional guidance, the Fifth Circuit in *Trois v. Apple Tree Auction Ctr.* recently reiterated that a single phone communication may be enough to establish personal jurisdiction in an intentional-tort claim when a non-resident defendant places a phone call to the forum state and makes false statements over the phone to a forum resident. *Trois*, 882 F.3d at 491 (collecting cases); *see also Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-34 (5th Cir. 1982) (holding one defamatory phone call initiated by the defendant was sufficient to establish personal jurisdiction). Although the defendant in *Trois* did not initiate the phone call, the court held "he was the key negotiating party who made representations regarding his business in a call to Texas. It is that intentional conduct on the part of [the defendant] that led to this litigation." *Trois*, 882 F.3d at 491. Noting "[t]he defendant[] should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to . . . make specific representations," the court

held the defendant had "requisite minimum contacts with Texas" to satisfy federal due-process requirements and establish specific personal jurisdiction. *Id.* Here, resolving factual conflicts in favor of Meyer, Meyer's tortious interference claim arises from the content of communications Waid made to a Texas business in Texas relating to a contract between the Texas company and a Texas citizen. By calling a Texas company and making intentional communications that form the basis of this litigation, Waid has the requisite minimum contacts with Texas to satisfy due-process requirements and lead a reasonable person to anticipate being haled into a Texas court.

Waid cites a number of cases to support his argument that while *Trois* is binding precedent, the "effects" test of *Calder* requires that "the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct *in the forum*, and [the plaintiff must] point to specific activity indicating that the defendant expressly aimed [his] tortious conduct *at the forum*." Dkt. #43 at 11; *Revell v. Lidov*, 317 F.3d 467, 475 n.63 (5th Cir. 2002) (quoting *IMO Indus. Inc. v. Kiekert AG*, 115 F.3d 254, 266 (3d Cir. 1998)). However, *Calder*'s "effects" test is but one way to establish minimum contacts and is not the proper test for determining Waid's minimum contacts and purposeful availment in this suit.

"*Calder*'s 'effects' test 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)). Rather, "[t]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Id.* (emphasis added). Thus, *Calder*'s effects test is just one way to show that a defendant has sufficient minimum contacts to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Id.* As the Fifth Circuit has made plain, "[w]hen the

Here:
actual content of communications with a forum gives rise to intentional tort causes of action, this *alone* constitutes purposeful availment." *Wien Air Alaska, Inc.*, 195 F.3d at 213 (emphasis added) (finding the tortious nature of the intentional tort constitutes purposeful availment). Thus, Meyer has shown sufficient minimum contacts and purposeful availment without satisfying the requirements of *Calder'*s effects test.[3]

Furthermore, Waid has not shown that the assertion of jurisdiction over him would be unfair. A defendant bears the burden to show that exercise of specific jurisdiction would *not* be fair and reasonable once minimum contacts have been shown, and such a finding is rare. *McFadin*, 587 F.3d at 759–60. Again, the court examines five factors in this inquiry: (1) the burden on the non-resident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* While it would burden Waid, a California resident, to litigate this matter in Texas, this factor cannot be dispositive. Here, Meyer alleges that Waid tortuously interfered in a contract between a Texas resident and a Texas company by calling the Texas company in Texas. Because of that, Texas has a great interest in this case. Waid has pointed to no other persuasive consideration that renders personal jurisdiction unfair or unreasonable.

For the foregoing reasons, the Motion should be **DENIED** as to Meyer's tortious interference claim.

---

[3] It is not lost on the undersigned that under Waid's view, a defendant who commits an intentional tort via telephonic communication merely needs to claim he did not know where the plaintiff resided at the time of the communication to avoid being haled into federal court for lack of personal jurisdiction. Such a test would be an affront to the minimum contacts and purposeful availment requirements and could not stand.

### 2. *Defamation*

This court previously recommended dismissals of Meyer's defamation claim for lack of personal jurisdiction because, as previously pleaded, Meyer did not allege his defamation claim arose out of contacts with Texas.[4] Dkt. #26 at 8-9. Upon being granted leave to amend, however, Meyer's First Amended Complaint now alleges that Waid defamed Meyer in statements made both during a comic convention in Houston, Texas, and to "his followers" on social media.[5] Dkt. #40 at ¶¶ 22, 24. Because defamatory "statements [made] at different times and for different audiences . . . represent completely different torts because they are different publications," this court must determine whether personal jurisdiction exists as to each alleged defamatory statement. *Deaver v. Desai*, 483 S.W.3d 668, 676 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see Seiferth*, 472 F.3d at 274 ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.").

#### i. Social Media Defamation Claim

Under the same rationale articulated in the undersigned's previous report and recommendation, Dkt. #26, the court lacks personal jurisdiction over Waid for Meyer's social media defamation claim. Meyer does not allege the social media statements were directed at, made in, or had any contacts with Texas. *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783 (1984), and finding the district court did not err in dismissing for lack of personal jurisdiction where the allegedly defamatory statements were not made in Texas or directed to residents of Texas). Rather, Meyer asks this court to "exercise pendent jurisdiction" over the social media defamation claim. However, the Fifth Circuit has found that:

---

[4] Meyer previously only pleaded that Waid defamed him "[t]hrough his various social media accounts." Dkt. #1 at ¶ 24. He had not alleged Waid defamed him during the Houston comic convention. *See id.*

[5] Both parties appear to agree that by stating "his followers," Meyer was pleading that the defamatory remarks were also made on social media platforms. *See* Dkt. #44 at ¶ 24; *see also* Dkt. #43 at 17-18.

10

> Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause. Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim.

*Seiferth*, 472 F.3d at 275. Thus, "there is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." *Id.* (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1351, at 299 n.30 (2004)); *see Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 197 (5th Cir. 2019). Therefore, the court does not have personal jurisdiction over Waid for Meyer's social media defamation claim, and the undersigned recommends Waid's Motion be **GRANTED** as it relates to this claim.[6]

ii.     Houston Comic Convention Defamation Claim

Meyer also pleads that Waid defamed him by making defamatory statements during a panel of comic book creators in Houston, Texas. Dkt. #40 at ¶ 22. Waid argues the court lacks personal jurisdiction over this claim because "Waid undisputedly did not know [Meyer] resided in Texas," an alleged requirement under *Calder'*s effects test. Dkt. #43 at 16-17.[7] In response, Meyer argues that knowledge of the plaintiff's citizenship is not required for a court to find specific personal jurisdiction. Dkt. #44 at ¶¶ 21-22.

As noted in more detail above, *Calder'*s effects test is but one way to establish sufficient minimum contacts and purposeful availment. As the Fifth Circuit recently affirmed, "in most

---

[6] Meyer does not argue for personal jurisdiction on this claim under *Calder*'s "effects" test and has therefore waived this argument.

[7] Meyer disputes this fact in his Motion. *See* Dkt. #44 at ¶ 21 ("Waid's jurisdictional objections to Meyer's defamatory claims focus on Waid's *feigned ignorance* of the fact that Meyer was a Texas resident when Waid defamed Meyer."). As stated above, at this stage of the proceedings the court must resolve factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *See Cent. Freight Lines Inc.*, 322 F.3d at 380.

cases, the defendant's commission of a tort while physically present in a state will readily confer specific jurisdiction." *Carmona*, 924 F.3d at 194, 194 n.6 (noting "we are aware of no examples . . . in which a court lacked jurisdiction under those circumstances"). This is because "'where the defendant *deliberately* has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). "Because [the defendant] '*voluntarily* entered [the] state and invoked the protections of its laws,' personal jurisdiction extend[s] to 'any tortious acts committed while there.'" *Id.* (quoting *Elkhart Eng'g Corp. v. Dornier Werke*, 343 F.2d 861, 867 (5th Cir. 1965)). Here, Meyer alleges Waid defamed him while in Houston, Texas. Accordingly, Meyer has alleged a prima facie case of personal jurisdiction.

Waid argues that even if jurisdiction is appropriate for a claim based on the Houston statements, the court should decline to exercise jurisdiction under the "fair and reasonable" factors. Dkt. #43 at 18. The court disagrees. The state of Texas clearly has a substantial interest in defamation cases where the statements were made about a Texas citizen at a Texas event in front of Texas residents. Accordingly, traditional notions of fair play and substantial justice are not offended by this court's exercise of personal jurisdiction over Waid. Waid's Motion should be **DENIED** as it relates to Meyer's defamation claim based on Waid's statements made in Houston.

### III. RECOMMENDATION

For the reasons given above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. #43) be **GRANTED in part** and **DENIED in part**. Specifically, the Motion should be **GRANTED** as to Plaintiff's defamation claim based on Defendant's social media posts and **DENIED** as to Plaintiff's defamation claim based on statements made during the Houston convention and as to Plaintiff's tortious interference claim.

The referral of this matter to the Magistrate Judge should now be canceled.

**IV. OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 13, 2020.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE