IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD MEYER, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 1:18-cv-00800-LY |
| | § | |
| MARK WAID, | § | |
| Defendant | § | |

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
REGARDING DEFENDANT'S MOTION TO DISMISS**

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, Defendant Mark Waid ("Waid" or "Defendant") submits the following objections to part of the Magistrate Judge's January 13, 2020 Report and Recommendation ("R&R"). Dkt. 51. Defendant requests that the Court sustain Defendant's objections, and that his Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (Dkt. 43) be granted in full.

## I.      INTRODUCTION

In his R&R, Judge Lane properly recommended dismissal of Plaintiff's defamation claim based on social-media posts for lack of personal jurisdiction.  Respectfully, however, Judge Lane erred in recommending that the district court find personal jurisdiction over Plaintiff's tortious-interference-with-contract claim and remaining defamation claim.  Before personal jurisdiction can exist in the intentional-tort context, Fifth Circuit precedent requires a showing that the defendant *knew* the plaintiff would suffer the brunt of the harm in the forum state. Defendant indisputedly lacked knowledge that Plaintiff was even located in Texas.  Additionally, Defendant respectfully submits it is imperative this issue be addressed now because a failure to correct the error would otherwise lead to costly and time-consuming substantive proceedings that would otherwise be reversed later on jurisdictional grounds.

## II.      TORTIOUS-INTERFERENCE CLAIM

Defendant objects to the R&R's finding and recommendation that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be denied as to Plaintiff's tortious-interference claim. Dkt. 51 at 7-9.  The standard of review for the objections herein is *de novo*.  28 U.S.C. § 636(b)(1).

### A. Fifth Circuit Precedent Requires a Showing That Defendant Knew Plaintiff Would Suffer the Brunt of Harm in Texas.

Before specific personal jurisdiction can exist as to an intentional-tort claim, the defendant must have known the plaintiff resided in and therefore would suffer the brunt of injury specifically in the forum.  Defendant respectfully objects to the R&R's failure to apply this principle.

Under Fifth Circuit precedent, "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm *forms an essential part of the* [specific-jurisdiction] test." *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (emphasis added); *accord Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 427 (5th Cir. 2005).  This requirement is derived from the "effects test" that comes from *Calder v. Jones*, 465 U.S. 783 (1984), a defamation case; but the requirement applies to all intentional torts.  *See, e.g.*, *Revell*, 317 F.3d at 475-476 & n.63 (relying on the following quote from *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998), a tortious-interference case: "[T]he plaintiff must show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct *in the forum*, and point to specific activity indicating that the defendant expressly aimed its tortious conduct *at the forum*."  (emphasis in original)); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (explaining, in tortious-interference case, "when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor *knows that the brunt of the injury will be felt by a particular resident* in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions" (emphasis added)); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (explaining that the *Calder* "test applies outside the context of defamation").

### A. The primary case relied upon by the R&R likewise does not support an exercise of personal jurisdiction.

*Trois v. Apple Tree Auction Ctr, Inc.*, 882 F.3d 485 (5th Cir. 2018) supports the requirement

that the defendant must have known the plaintiff was in the forum and intended to cause harm

there.   The R&R described *Trois* as follows:

> *Trois* . . . reiterated that . . . a single phone communication may be enough to
> establish personal jurisdiction in an intentional-tort claim when a non-resident
> defendant places a phone call to the forum state and makes false statements over
> the phone to a forum resident.

Dkt. 51 at 7.  That a single communication "*may* be enough" to support personal jurisdiction is an

accurate statement.   However, for jurisdiction to exist, it is a necessary prerequisite that the

defendant have known the plaintiff resided in the forum at the time of the allegedly tortious

conduct and that the harm would occur there. At the outset of the opinion, the *Trois* Court expressly

stated that, with respect to the telephone calls at issue, the defendant allegedly "*knew* [the plaintiff]

lived in Texas." *Trois*, 882 F.3d at 488 (emphasis added).  The calls concerned the defendant's

efforts to auction items owned by the plaintiff in Texas—thus further indicating the defendant

knew plaintiff's location and that harm would occur in that jurisdiction.  *Id.* at 491-492. Indeed,

the Court discussed the effect of a defendant's knowledge that the plaintiff was in the forum, but

made the point that "mere knowledge" of the plaintiff's forum location is not alone enough to

support jurisdiction. *Id.* at 492 n.7.   *Trois* is in harmony with *Revell* and other prevailing Fifth

Circuit precedent, in that jurisdiction over an intentional tort requires a showing the defendant

*knew* the plaintiff resided in the forum and specifically directed harm there.  *Trois* does not support

disregarding or overriding *earlier* Fifth Circuit precedent on this point.[1]

Mere knowledge of location alone would not support jurisdiction, but jurisdiction does not

---

[1] The R&R also cites *Brown v. Flowers Indus.*, 688 F.2d 328 (5th Cir. 1982), but that case involved
a call directed to the U.S. Attorney in Mississippi in regard to Mississippi residents, making clear
defendant knew the plaintiffs were in that forum. *Id.* at 330-31; *see also Wien Air*, 195 F.3d at 210-
12 (involving defendant's addressing letters and many calls to plaintiff in Texas and visits with
plaintiff in Texas).

exist, as a matter of law, absent that showing. *See, e.g.*, *IMO*, 155 F.3d at 266 ("While knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient. . . ."). Without consideration of the defendant's knowledge, a court cannot ascertain whether the defendant *purposefully* created a substantial connection to the forum, and instead would improperly allow jurisdiction based on the "'random, fortuitous, or attenuated' contacts [the defendant] makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Under the subjective nature of the inquiry, "an essential part of the [specific-jurisdiction] test" is a showing that the defendant *knew* the plaintiff would "bear the brunt of the harm" in the forum. *Revell*, 317 F.3d at 475. As Judge Sparks held in a non-defamation case:

> [Defendant] alleges he did not know where [plaintiff] lived while the two of them were communicating via Skype, and [plaintiff] does not challenge the truth of that allegation. '*Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part*' of the purposeful availment analysis. . . . Because [defendant] did not know where [plaintiff] was located during their communications, [defendant's] conduct was necessarily not purposefully directed at Texas, and specific jurisdiction cannot lie.

*See Rad v. Bragg*, No. 14-1074-SS, 2015 WL 12748177, at *3 (W.D. Tex. May 8, 2015) (emphasis added). The R&R erred in finding that, without the threshold showing that a defendant knew the plaintiff was in Texas and that harm would occur there, objective ties to Texas are sufficient to satisfy the required test.

**B. Respectfully, the R&R also erred in assuming the knowledge requirement was not part of Plaintiff's required showing.**

The R&R appears to agree that the "effects test" requires showing that the defendant knew the plaintiff resided in the forum and would suffer the brunt of any injury there, but then assumed it need not be satisfied. The R&R notes, "*Calder*'s 'effects' test is but one way to establish minimum contacts and is not the proper test for determining Waid's minimum contacts and

purposeful availment in this suit." Dkt. 51 at 8.  Waid respectfully objects to the R&R's analysis on this point, because the elements of the "effects test" are a necessary part of the showing that must be made to establish personal jurisdiction.

As noted above, binding precedent requires, in an intentional-tort suit, that the plaintiff establish that the defendant knew the plaintiff resided in the forum.  *See, e.g.*, *Revell*, 317 F.3d at 475 & n.63.  This element is a necessary part of the overarching test for personal jurisdiction, not merely an alternative path to show jurisdiction.  The R&R relies on *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865 (5th Cir. 2001).  But the *Panda* decision itself makes clear that the *Calder* analysis is a necessary part of *the* jurisdictional analysis: "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum."  *Id.* at 869 (emphasis in original). When the *Panda* Court observed that the effects test is "not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment," the Court was making the point that merely because a defendant knew the plaintiff would suffer injury in the forum is insufficient.  *Id.* at 869-870 ("'Foreseeable injury alone is not sufficient to confer specific jurisdiction....'" (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999)).

Other Fifth Circuit precedent additionally makes it clear that the larger "purposeful availment" analysis necessitates satisfaction of the effects test as part of that analysis.  *Revell*, for example, explains that "the 'effects' test is but one facet of the ordinary minimum contacts analysis."  *Revell*, 317 F.3d at 473.  *Revell* goes on to state that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*," but that "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test."  *Id.* at 473, 475.  *Revell* further emphasizes that

satisfying this *Calder* analysis is necessary in order to show that the defendant "reasonably anticipate[d] being haled into court in th[e] forum." *Id.* at 475.  In *Rad v. Bragg*, Judge Sparks correctly recognized that the defendant's knowledge of the plaintiff's location in the forum is an inescapable part of the core jurisdictional inquiry—expressly tying such knowledge to the "purposeful availment analysis."  *See Rad v. Bragg*, 2015 WL 12748177, at *3 (W.D. Tex. May 8, 2015) ("'Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part' *of the purposeful availment analysis*…." (quoting *Revell*, 317 F.3d at 475) (emphasis added)); *see also Festor v. Wolf*, 2009 WL 10669519, at *6 (W.D. Tex. Aug. 24, 2009) (explaining that the principle that the defendant must have known the plaintiff would suffer brunt of harm in forum is "fundamental to due process").

In sum, Waid respectfully submits that the law is clear that the plaintiff must show that defendant knew that the plaintiff resided in the forum state and would suffer the brunt of harm there.  Waid respectfully submits that the R&R's erroneous assumption that such knowledge was not part of the necessary inquiry caused the R&R to incorrectly find jurisdiction existed.

## C.  Waid indisputedly did not know Plaintiff resided in Texas at the relevant time.

In his Amended Complaint, Plaintiff does not even allege he resided in Texas during the relevant time (or otherwise prove that up); he certainly does not allege that Waid knew he resided in Texas.  In addition, Plaintiff does not otherwise dispute—and the R&R does not take issue with the fact—that Waid did not know Plaintiff resided in Texas at the time of the calls on which Plaintiff's tortious-interference claim is based.  *See* Dkt. 43-1, Decl. ¶¶ 9, 14. Plaintiff, in fact, publicly held himself out as being located in New York.  *Id.* ¶ 8 & Exs. 1 & 7.

The R&R notes that Plaintiff's briefing referred to Waid's "feigned ignorance" regarding Plaintiff's location (Dkt. 51 at n7), but Plaintiff failed to identify even one piece of evidence

rebutting Waid's evidence on this point. Plaintiff himself noted that "any conflicts *between evidence submitted [by] the parties [must be resolved] in favor of the plaintiff.*" Dkt. 44 at 8 (emphasis added); *see, e.g.*, *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 609 (5th Cir. 2008) ("conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor"); *Revell*, 317 F.3d at 469 (explaining court may only accept *uncontroverted* allegations and may resolve conflicts in *evidence*, such as in affidavits, in favor of plaintiff). Plaintiff's unsupported and vague assertions do not create a valid conflict. In sum, Fifth Circuit precedent requires dismissal of Plaintiff's tortious-interference claim for lack of personal jurisdiction.[2]

While Waid does not believe his knowledge regarding the location of Antarctic Press ("AP") is relevant, he discusses it here because the R&R briefly mentioned the issue. AP is the publisher that considered publishing Plaintiff's book.[3] AP is not the plaintiff and therefore any

---

[2] The R&R expressed some concern about requiring the Plaintiff to show the Defendant knew the Plaintiff would suffer the brunt of injury in the forum, because a defendant would need only "claim he did not know where the plaintiff resided" to avoid jurisdiction. Dkt. at n.3. But the plaintiff would need to allege this fact, and, if alleged, the defendant would need to prove through evidence—not merely bald "claims"—that he did not know where the plaintiff resided. In this case, as discussed, Plaintiff does not even allege that he lived in Texas at the relevant time (rather the evidence indicates he actually lived in New York), much less does Plaintiff allege that Defendant knew Plaintiff lived in Texas—and, moreover, Defendant submitted unrebutted evidence that he did not know where Plaintiff resided. More generally, the jurisdictional test focuses on whether the defendant *purposefully* created a *substantial connection* with the forum, thus the Fifth Circuit's requiring the defendant to have known the plaintiff would bear the brunt of any injury in the forum is a sensible way to ensure the overarching inquiry is properly met.

[3] The R&R (Dkt. 51 at 3) explains that Plaintiff alleges that Defendant caused AP to decide not to publish Plaintiff's book. These allegations, however, are affirmatively defeated by actual evidence, which makes clear Defendant did not cause AP to not publish the book—rather AP made that decision based on Plaintiff's own conduct. *See, e.g.*, Dkt. 43, J.Dunn Dep., 107:20-108:19; 111:7-111:16. Also, while Plaintiff alleges AP breached a contract, the facts affirmatively show AP did not breach any contract (as none even existed). *Id.* at 71:4-8; 72:10-73:5. It would make little sense to allow Plaintiff's allegations to control in light of undisputable first-hand evidence that would defeat this action on summary judgment. To the extent the R&R relied on these mere allegations, Defendant objects that the evidence should have taken precedence.

knowledge regarding its location is not material to the outcome given Defendant's lack of knowledge regarding *Plaintiff's* location. It does not appear that the R&R based its decision on any knowledge of Defendant regarding AP's location. But, out of caution, Defendant also objects to the R&R's brief discussion concerning AP's location. The R&R notes that whether Defendant knew AP was in Texas is "disputed," such that the Court was to "resolve factual conflicts in favor of the party seeking to invoke the court's jurisdiction." Dkt. 51 at 6 & n.2. The R&R's statement indicates a misunderstanding of the law and the situation involving AP.

The evidence affirmatively showed Defendant did not know AP was in Texas at the time of his calls with AP. *See* Dkt. 43-1, ¶¶ 14, 21. Nor does Plaintiff's pleading allege otherwise. Plaintiff submitted arguments relating to San Antonio's area code—without any evidence that Defendant knew that area code was associated with Texas or even any evidence showing that the area code is generally known by non-Texans as associated with Texas. Moreover, even if Defendant had such knowledge (which he did not), that would be insufficient. *See, e.g.*, *Tornado Bus. Co. v. Bus. & Coach Am. Corp.*, 2014 WL 7333873, at *3 (N.D. Tex. Dec. 23, 2014) (noting "courts are reluctant to find jurisdiction based only on emails and phone calls because reliance on telephone calls and email can no longer reliably prove purposeful availment" (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005)). Also, AP itself admitted that it was not known as a Texas-based publisher. Dkt. 43, J. Dunn Dep., 32:17-33:7. Ultimately, Plaintiff was able to demonstrate merely that Defendant knew **after the calls** that AP was in Texas (*see* Dkt. 44 at 11)—which would not be relevant even if AP itself were the plaintiff. *See, e.g.*, *Festor*, 2009 WL 10669519, at *5 (holding defendant's knowledge plaintiff lived in Texas was not relevant to or in conflict with dispositive point that he did not know this at time of fraudulent

communications).  Plaintiff, however, did not submit ***evidence*** rebutting the fact Defendant ***did not know*** AP was in Texas at the time of the allegedly tortious conduct.

In sum, Defendant's lack of knowledge of Plaintiff's forum location, and therefore that the brunt of any harm could occur there, necessitates dismissal of the tortious-interference claim. Even if knowledge regarding AP's location were material (which it is not), the evidence affirmatively shows that Defendant did not know AP was in Texas at the time of the allegedly tortious conduct.[4]

### III.    PLAINTIFF'S DEFAMATION CLAIMS

The R&R correctly found that the jurisdictional inquiry requires a claim-by-claim analysis and that personal jurisdiction was lacking as to Plaintiff's "social media" defamation claim.  Dkt. 51 at 10.  However, Waid submits that the R&R incorrectly found jursidiction as to the "Houston convention" defamation claim.

The R&R's conclusion in regard to this "Houston" claim is based on the same erroneous premise regarding application of the "effects test." *Id.* at 11-12.  As discussed above, the "effects test," and in particular a showing that Defendant knew Plaintiff resided in Texas and would bear the brunt of harm there, is a necessary component of the jurisdictional inquiry.[5]

---

[4] The R&R also respectfully failed to appreciate the fact that the larger dispute at issue has no meaningful connection to Texas.  The case arises out of plans to publish a book to be created by a team spread across multiple states, whose subject matter would not be Texas, and that would be aimed at the world-wide comic book market.  Moreover, Defendant's alleged conduct stems from Plaintiff's anti-diversity campaign that targets the comic-book market generally—not anything unique or connected to Texas.  *See* Am. Compl. ¶¶ 15-17; Dkt. 43-1, Decl. ¶¶ 11-13, 20.  Even where the defendant actually knew the plaintiff was in the forum, the larger context of the dispute must be considered as well.  *See, e.g.*, *Herman v. Cataphora, Inc.*, 730 F.3d 460, 462, 465-466 (5th Cir. 2013).  This larger context defeats jurisdiction at the outset (even if Defendant had the requisite knowledge—which he did not).

[5] The R&R cites *Carmona v. Leo Ship Mgt.*, 924 F.3d 190, 197 (5th Cir. 2019), but that case is a negligence (not an intentional-tort) case, involved personal injury of the plaintiff in the forum (such that location of the injury was plain), and still emphasized that committing a tort in the forum does not necessarily support jurisdiction.

Defendant concedes the "Houston" claim presents a close question. Alternatively, especially given that Plaintiff's tortious-interference claim cannot be litigated in this Court (as discussed above), the Court should decline to exercise any jurisdiction over the "Houston convention" claim. While Plaintiff now apparently resides in Texas, Defendant lacks connection to Texas; Texas has little interest in resolving the "Houston" claim when the remainder of Plaintiff's claims cannot be heard by this Court; California has a shared interest in this dispute; Plaintiff's defamation allegations relate to the comic-book market generally; it would be extremely inefficient to have such a small part of Plaintiff's claims in Texas; and Plaintiff's interest in seeking relief as to the "Houston" claim is extremely weak, as the Houston statements occurred *after* AP decided not to publish Plaintiff's book. *See generally* Dkt. 43-1 ¶¶6, 11-12; First Am. Compl. ¶¶22, 24. Under the "fair and reasonable" factors, the Court should decline to exercise jurisdiction over the "Houston" claim, even if there were otherwise jurisdiction. *See McFadin v. Gerber*, 587 F.3d 753, 759-760 (5th Cir. 2009) (listing factors). In the alternative, the Court should transfer the action to the Central District of California, since Plaintiff's interference and "social media" claims cannot be litigated in Texas. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Such transfers [under 28 U.S.C. § 1404(a)] may be made *sua sponte*.").

## IV.    <u>CONCLUSION</u>

Defendant prays that the Court sustain his objections to the R&R's finding and recommendation that the Motion to Dismiss as to the tortious-interference claim be denied. Defendant's objections to the finding and recommendation that the Motion be denied as to the "Houston convention" defamation claim should also be sustained. In sum, the Motion to Dismiss (Dkt. 43) should be granted in full.

-10-

DATE:  January 24, 2020

Respectfully submitted,

REEVES & BRIGHTWELL LLP

<u>*/s/ Ryan Pierce*</u>
Beverly Reeves
State Bar No. 16716500
breeves@reevesbrightwell.com
Ryan Pierce
State Bar No. 24035413
rpierce@reevesbrightwell.com
221 W. 6th Street, Suite 1000
Austin, TX  78701-3410
512.334.4500 Telephone
512.334.4492 Facsimile

Mark S. Zaid, Esq.
D.C. Bar #440532 (admitted *Pro Hac Vice*)
Mark@MarkZaid.com
Mark S. Zaid, P.C.
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
202.454.2809 Telephone
202.330.5610 Facsimile

**ATTORNEYS FOR DEFENDANT
MARK WAID**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2020, a true and correct copy of the foregoing document was sent via CM/ECF electronic filing and/or U.S. mail to the following:

> Daniel H. Byrne
> Dale L. Roberts
> Fritz, Byrne, Head & Gilstrap, PLLC
> 221 W. 6th Street, Suite 960
> Austin, TX 78701
> dbyrne@fbhg.law
> droberts@fbhg.law

*/s/ Ryan Pierce*
Ryan Pierce